[L. A. No. 27655.   In Bank.   Aug. 20, 1964.]

RONALD J. VALENTA et al., Plaintiffs and Appellants, v. COUNTY OF LOS ANGELES et al., Defendants and Respondents.

Anson, Gleaves & Larson and Milnor E. Gleaves for Plaintiffs and Appellants.

Harold W. Kennedy, County Counsel, Lloyd S. Davis, Deputy County Counsel, E. D. Yeomans, Walt A. Steiger and James W. Obrien for Defendants and Respondents.

TOBRINER, J.—This case involves a claim of inverse condemnation for damages to plaintiffs' property resulting from a cul-de-sac. Although plaintiffs' property lies in an unincorporated, rather than incorporated, area, we explain why we have concluded that the principle of substantial impairment of access, as expressed in *Breidert* v. *Southern Pac. Co.* (1964) *ante,* p. 659 [39 Cal.Rptr. 903, 394 P.2d 719], which there applies to an incorporated area, is equally applicable here.

Plaintiffs are the owners of one-half of a quarter section of land in the small rural community of Vincent, an unincorporated area of Los Angeles County. Plaintiffs' property is bordered on the west by Sierra Highway and on the east by the right-of-way of the Southern Pacific Railroad. Sierra Highway and the railroad right-of-way run in a general northerly-southerly direction and are approximately 600 feet apart. Angeles Forest Highway, a county road, has its westerly terminus at Sierra Highway in the Town of Vincent, where it intersects, but does not cross, Sierra Highway. From here Angeles Forest runs in a southeast direction, through plaintiffs' land and across the railroad right-of-way, to Angeles Crest Highway, the most direct route from Vincent to the general system of public streets in the Pasadena-Los Angeles area. The record does not disclose the use to which plaintiffs have put their land.

In 1959 the county board of supervisors entered into an agreement with the defendant railroad for the construction of a grade crossing some distance from the existing crossing at Angeles Forest Highway and for the closing of the Angeles Forest crossing. In the same year the Public Utilities Commission approved the closing, and in 1961 defendants permanently closed the crossing by placing barricades along both sides of the railroad right-of-way at Angeles Forest Highway.

Plaintiffs allege that the closing has destroyed all access from their property over Angeles Forest Highway, and that the closing has placed plaintiffs' property in a cul-de-sac. In

the present action plaintiffs claim damages in inverse condemnation for the taking or damaging of their right of access in Angeles Forest Highway. Plaintiffs' claim is based upon article I, section 14 of the California Constitution, providing that "Private property shall not be taken or damaged for public use without just compensation. . . ." The trial court sustained defendants' general demurrer to plaintiffs' amended complaint; it entered judgments of dismissal as to both defendants. Plaintiffs appeal these judgments.

▮ Thus we deal with claimed damage resulting from the creation of a cul-de-sac; the principle expressed in *Breidert* v. *Southern Pacific Co.* (1964) *ante,* p. 659 [39 Cal.Rptr. 903, 394 P.2d 719], as to such a situation must apply. Although defendants argue that "the cul-de-sac rule cannot properly be applied to a rural highway," any distinction between unincorporated rural areas and incorporated city areas would be purely formal.

To grant recovery to owners of property in an incorporated area and to deny it to those in an unincorporated area would be to draw an indefensible division. No reasonable or functional line distinguishes such property holders. The unincorporated area often becomes the incorporated area; the sprawling growth of city and subdivision necessarily blurs any such classification. Indeed, the cases recognize that the owners of land in unincorporated areas possess property rights identical to those of urban landowners. (See *People* ex rel. *Dept. of Public Works* v. *Lipari* (1963) 213 Cal.App. 2d 485, 489 [28 Cal.Rptr. 808]; *Leverone* v. *Weakley* (1909) 155 Cal. 395, 402 [101 P. 304]; *Anderson* v. *State* (1943) 61 Cal.App.2d 140, 141, 143 [142 P.2d 88]; see also *Rose* v. *State* (1942) 19 Cal.2d 713, 730 [123 P.2d 505].)

In *Tift County* v. *Smith* (1962) 107 Ga.App. 140 [129 S.E.2d 172] (reversed on other grounds (1963) 219 Ga. 68 [131 S.E.2d 527]), the Georgia Court of Appeals held, on facts substantially identical to those of the instant case, that rural property owners had the same rights in abutting streets as did city property owners, and that plaintiff was entitled to compensation for loss of access. The court stated that "The defendant seeks to draw a distinction between rural property and urban property when, while the value per front foot may vary, there is no distinction in the rights in the owners of such property. The provisions of the Constitution that the protection of person and property shall be impartial and

complete [citations], and that private property shall not be taken or *damaged* without just compensation being first paid [citations] do not allow one rule for urban property owners and another for owners of rural property." (*Id.* at p. 174 [129 S.E.2d].)

Defendants rely upon dicta in two older cases which we disapprove. In *Levee Dist. No. 9* v. *Farmer* (1894) 101 Cal. 178 [35 P. 569, 23 L.R.A. 388], and *Swift* v. *Board of Supervisors* (1911) 16 Cal.App. 72 [116 P. 317], the respective plaintiffs unsuccessfully sought injunctive relief against county boards in order to prevent proposed abandonments of county roads. Holding that the involved board possessed the power to order such abandonment, each of these courts included in its opinion dicta to the effect that an abutting owner cannot recover damages for loss of access to a county, as distinguished from a city thoroughfare. *Metzger* v. *Bose* (1960) 183 Cal.App.2d 13 [6 Cal.Rptr. 337], relies upon the same proposition. As we have stated, we do not agree, and to that extent we disapprove of those cases.

The test, established in *Breidert,* as applicable here, requires that we determine whether plaintiffs have alleged a substantial impairment of access to the general system of public streets or highways. Although in *Breidert* we were concerned solely with an incorporated urban area and thus held plaintiffs' right of access ran to the general system of public *streets,* we are here involved with an unincorporated area and therefore hold plaintiffs' right of access extends to both the general system of public streets and public highways.

Plaintiffs' first amended complaint, under this test, does not sufficiently allege the necessary showing. As we noted in *Breidert* the decisions have explained that the court must determine whether the property owner has made a showing of substantial impairment of access; the bare allegation of a cul-de-sac does not suffice. Plaintiffs here have failed to specify the use to which plaintiffs have put their property; the added distance, if any, which they must travel in order to reach the general system of public streets or public highways; the lack of availability of reasonable alternative routes to such general system of public streets or public highways; or, indeed, whether the closing has substantially impaired plaintiffs' right of access to such public streets or public highways.

In light of our ruling in *Breidert,* we believe, however, that plaintiffs should be granted a further opportunity to amend

their complaint, if they can do so, to state a cause of action for such substantial impairment of access.

The judgments are reversed.

Gibson, C. J., Schauer, J., McComb, J., Peters, J., and Peek, J., concurred.

TRAYNOR, J., Concurring.—Although I adhere to the views set forth in my dissenting opinion in *Bacich* v. *Board of Control,* 23 Cal.2d 343, 366-380 [144 P.2d 818], that case is the law of this state until it is overruled. I therefore concur in the judgment herein under the compulsion of the *Bacich* case.

Respondents' petition for a rehearing was denied September 18, 1964.